UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOJTABA TAIEBAT,<br><br>        Petitioner,<br><br>    v.<br><br>LORI SCIALABBA, et al.,<br><br>        Respondents. | Case No. 17-cv-0805-PJH<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

On February 17, 2017, Mojtaba Taiebat ("petitioner") filed the above-entitled action seeking a writ of mandamus compelling U.S. Citizenship and Immigration Services ("USCIS") to adjudicate his petition for adjustment of status, which he claims has been pending since May 2015. Also on February 17, 2017, petitioner filed a motion for temporary restraining order and motion for preliminary injunction. Respondents filed an opposition to the motion on February 24, 2017.

Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion, and VACATES the hearing previously set for March 1, 2017.

**BACKGROUND**

The petitioner is a citizen of Iran. Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief ("Pet.") ¶ 12. He alleges that he came to the United States in 2007 on an F-1 nonimmigrant student visa, to attend graduate school. Pet. ¶ 13. In December 2011, he received a Ph.D. in Environmental Design and Planning, with an emphasis in Building Construction. Pet. ¶ 3. He initially worked in New York, and then was hired by DPR Construction ("DPR") in Redwood City, California. Pet. ¶¶ 2, 14.

He is currently on H-1B nonimmigrant status.  Pet. ¶ 2.

On May 23, 2015, DPR filed an employment-based visa petition (Form I-140) on petitioner's behalf, claiming he is a member of a profession holding an advanced degree. Pet. ¶¶ 2, 16.  Concurrently, petitioner filed an application for adjustment of status (Form I-485) based on that visa petition.  Pet. ¶¶ 2, 16.  Petitioner does not clearly say, but it appears that he is seeking lawful permanent resident status.  USCIS received these applications on May 26, 2015.  Pet. ¶ 16.  The employment-based visa petition was approved on September 10, 2015.  Pet. ¶¶ 2, 16.  However, the petition for adjustment of status remains pending.  Pet. ¶¶ 2, 6.

Petitioner claims that when he came to the United States to attend graduate school, he became eligible under Iranian law to delay his mandatory military service in Iran.  Pet. ¶ 13.  To date, he has not returned to Iran to complete his military service, although he continues to be eligible for a special exemption for Iranians who live abroad. Pet. ¶ 15.  He asserts that under current Iranian law, individuals who have not completed their military service and are outside Iran, may enter and exit Iran twice a year for a total cumulative stay of three months.  Pet. ¶ 15.  This provision is allegedly set to expire on March 20, 2017.  Pet. ¶ 29.

Petitioner asserts that since January 2016, he has been attempting to persuade USCIS to adjudicate his application for adjustment of status, or, at least to ascertain the status of his application.  Pet. ¶¶ 17-27.  He has been in frequent contact with USCIS and the USCIS Ombudsman's Office, and has also enlisted the assistance of Rep. Anna Eshoo and Rep. Jackie Speier, Members of Congress from California. Pet. ¶¶ 17-27. USCIS has advised that petitioner's application is in the process of being reviewed by the Background Check Unit at USCIS.  Pet. ¶ 26.

The petition alleges two causes of action -- (1) a claim under the Mandamus Act, 28 U.S.C. § 1361, seeking to compel defendants to adjudicate his adjustment application within a reasonable period of time; and (2) a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(1), seeking to compel agency action unlawfully withheld or

unreasonably delayed.  Petitioner seeks both a TRO and a preliminary injunction.

## DISCUSSION

A.   Legal Standard

A  temporary restraining order ("TRO") is a form of preliminary injunctive relief.  Its sole purpose is to preserve the status quo pending hearing on the moving party's application for a preliminary injunction.  Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974).  Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction.  New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977); Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n. 7 (9th Cir. 2001).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the [moving party] is entitled to such relief."  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008); see also Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (a preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion").

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  Winter, 555 U.S. at 20.  Alternatively, the plaintiff may demonstrate that the likelihood of success is such that "serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor," so long as the other two elements of the Winter test are met.  Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

In addition, because the basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits, Chalk v. U.S. Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988), courts generally require a movant to meet a higher

1  degree of scrutiny where the movant seeks to alter rather than maintain the status quo, or
2  where issuance of the injunction will provide the movant with substantially all of the relief
3  that would be available after a trial on the merits.  See Schwarzer, Tashima & Wagstaffe,
4  Federal Civil Procedure Before Trial (2017 ed.) § 13:46; see also Dahl v. HEM Pharms.
5  Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (requests for mandatory (as opposed to
6  prohibitory) preliminary injunctions that would alter the status quo are "subject to a
7  heightened scrutiny and should not be issued unless the facts and law clearly favor the
8  moving party"); Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 808 (9th Cir.1963)
9  ("[I]t is not usually proper to grant the moving party the full relief to which he might be
10 entitled if successful at the conclusion of a trial.")

11 B.    Petitioner's Motion

12      In his motion, petitioner seeks the same relief as in his petition for writ of
13 mandamus.  He claims there is urgency because the Iranian law allowing him to enter
14 and leave again is set to expire on March 20, 2017.  In addition, he cites to recent
15 Executive Order 13769, entitled "Protecting the Nation From Travel From Foreign Tourist
16 Entry into the United States," which suspended "immigrant and nonimmigrant entry into
17 the United States" of citizens from specified countries, including Iran.  See 82 Fed. Reg.
18 8977 (Jan. 27, 2017).  Certain provisions of Executive Order 13769 have been
19 suspended pursuant to a nationwide TRO, but petitioner is concerned that a future
20 Executive Order may make it impossible for him to re-enter the United States on his H-1B
21 visa.

22      Petitioner wants to travel to Iran to visit his family, and return before the Iranian
23 law permitting him an exemption to the military service requirement expires on March 20,
24 2017.  He seeks an order compelling USCIS to give him a decision by March 6, 2017,
25 and (if it is approved) to provide him with the relevant documents so he can travel to and
26 return from Iran by March 10, 2017.

27      Petitioner argues that issuance of a TRO is warranted because he will suffer
28 immediate and irreparable harm if he loses his ability to visit his family in Iran.  He asserts

4

that at the time he filed his application for adjustment of status in May 2015, employment-based applications for adjustment of status were being adjudicated in approximately six months, and he believed that he would be able to travel outside the United States as a lawful permanent resident prior to the expiration of the Iranian law permitting his entry and exit from the country.  He claims that the failure of USICS to adjudicate his application for adjustment of status within a reasonable time will cause him immediate and irreparable harm.

Petitioner asserts further that his situation warrants issuance of a preliminary injunction.  He claims that he has made a strong showing that he is likely to succeed on the merits of his petition for a writ of mandamus – specifically, that because more than 620 days have passed since he filed his application for adjustment of status, he is likely to succeed in showing that defendants failed to adjudicate his application within a reasonable time.

Petitioner also reiterates that he will suffer irreparable harm in the absence of a preliminary injunction – specifically, that if his application for adjustment of status is not immediately adjudicated, he will not be able to visit his family in Iran after March 20, 2017.

Finally, petitioner asserts that both the balance of equities and the public interest favor granting a preliminary injunction.  He claims that he has shown that he warrants an injunction, because he has shown that defendants have failed for more than 620 days to adjudicate his petition for adjustment of status, and has also shown that he has been diligently pursuing the status of his application since he filed it.  He argues that the government will not incur any new burden if it is compelled to adjudicate the application, as USCIS is already required to adjudicate the application within a reasonable time frame.

The court finds that the motion must be DENIED.  First, petitioner is improperly seeking to obtain, by means of a TRO, a substantial portion of the ultimate relief he seeks in the case.  The sole purpose of a TRO is to preserve the status quo pending hearing on

the moving party's application for a preliminary injunction. Granny Goose Foods, 415 U.S. at 439. "Status quo" means the last uncontested status that preceded the pending controversy. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000). The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981).

Here, petitioner is not attempting to preserve the status quo or the relative positions of the parties pending a determination on the merits. Rather, he is seeking a mandatory injunction that would require the government to immediately adjudicate his petition for adjustment of status. The relief petitioner is seeking in this motion is not "temporary" or "preliminary," but rather is the exact same ultimate relief he seeks in his petition. "[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." Id.; see also Senate of State of Cal. v. Mosbacher, 968 F.2d 974, 978 (9th Cir. 1992) ("[a] judgment on the merits in the guise of preliminary relief is a highly inappropriate result").

Second, petitioner has not established that he is likely to prevail on the merits of his claims. Petitioner asserts two causes of action – a claim under the Mandamus Act and a claim under the APA – both of which allege that defendants have not adjudicated his adjustment application within a reasonable time. Relief under the Mandamus Act and the APA are "virtually equivalent when a petitioner seeks to compel an agency to act on a nondiscretionary duty." Independence Mining Co. v. Babbitt, 105 F.3d 502, 507 (9th Cir. 1997). In general, district courts within the Ninth Circuit have concluded that while the government has discretion whether to grant or deny an application for adjustment of status under I-485, it has a non-discretionary duty to act on that application within a reasonable time. See Liu v. Chertoff, 2007 WL 2435157 (D.Or. Aug. 29, 2007) (citing cases).

Petitioner's claim that defendants have unduly delayed in adjudicating his adjustment application rests on the premise that more than 20 months have elapsed

since USCIS' receipt of his application.  In exercising their discretion to determine whether agency delay is unreasonable for purposes of a claim under the APA, 5 U.S.C. § 706(1), courts consider the following factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Brower v. Evans, 257 F.3d 1058, 1068 (9th Cir. 2001) (quoting Telecomms. Resource & Action (TRAC), 750 F.2d 70, 80 (D.C. Cir. 1984)).

Petitioner's argument regarding his likelihood of success on the merits of his petition implicates only the first TRAC factor, which requires that the time an agency takes to make a decision be governed by a "rule of reason."  Brower, 257 F.3d at 1068. In similar cases in which a plaintiff seeks to compel adjudication of an adjustment petition, courts have found the length of the delay to be a dispositive fact.  See, e.g., Dosouqi v. Heinauer, 2013 WL 664150, at *2 (N.D. Cal. Feb. 22, 2013).  What constitutes unreasonable delay in the context of immigration applications depends in large part on the facts of the particular case.  See Gelfer v. Chertoff, 2007 WL 902382 at *2 (N.C. Cal. Mar. 22, 2007).

Courts in this judicial district have found delays of four years or less in adjudicating applications for adjustment of status to be "not unreasonable."  Islam v. Heinauer, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014); see also Dosouqi, 2013 WL 664150 at *2 (delay of three and one-half years not unreasonable); Islam v. Heinauer, 2011 WL 2066661, at *8 (N.D. Cal. May 25, 2011) (point of unreasonableness had "not yet come" after three-year delay); Khan v. Scharfen, 2009 WL 941574 (N.D. Cal. Apr. 6, 2009) (one-year delay

7

not unreasonable).

Based solely on the application of the first TRAC factor, the court finds that petitioner has not shown that a delay of less than two years is unreasonable. As for the second through sixth TRAC factors, petitioner has provided no evidence or argument sufficient to show a likelihood of success on the question whether USCIS has unreasonably delayed in adjudicating petitioner's adjustment application.

Third, the court finds that petitioner has not shown that he will suffer irreparable harm. "Plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." Cottrell, 632 F.3d at 1121 (citing Winter, 555 U.S. at 24). In this case, however, plaintiff's claim of irreparable harm is largely speculative. He asserts that he is at significant risk of not being permitted entry into the United States from abroad unless he is a lawful permanent resident, and that his family is unable to visit him because of Executive Order 13769. However, plaintiff alleges that he is currently in the United States under a valid H-1B visa, and has not shown that he would be denied re-entry under that visa were he to leave the U.S. to travel to Iran. Nor has he provided evidence of any concrete travel plans that could support his claimed speculative harm. As for his family members, petitioner concedes that Executive Order 13769 is currently suspended, and he has not shown that his family would be precluded from traveling to the United States on nonimmigrant tourist visas.

Moreover, plaintiff cannot establish that the mandatory injunction he seeks would address the alleged harm. A claim under the APA, 5 U.S.C. § 706(1), allows the court to compel an agency to take action, but it does not permit the court to compel a specific result. See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004); St. Helens Mining & Recovery Ltd. P'ship v. U.S., 384 F.3d 721, 728 (9th Cir. 2004). Thus, an order compelling USCIS to adjudicate the adjustment application by March 6, 2017, would not necessarily result in an approval of petitioner's application and adjustment of his status to that of lawful permanent resident.

Finally, the alleged harm claimed by petitioner is at least partly a result of his own

actions. He asks the court to order that his application for adjustment of status be adjudicated by March 6, 2017, or at the very least, by a date that would allow him time to travel to, and return from, Iran prior to March 20, 2017, when the law exempting him from military service will allegedly expire. Defendants did not create this predicament for petitioner. Rather, he himself made the decision to avoid his asserted obligation as a citizen of Iran to complete military service.

The remaining two factors – balance of harms and public interest – merge when the government is the party opposing a motion for preliminary injunction. Nken v. Holder, 556 U.S. 418, 435 (2009). Further, courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-13 (1982). Petitioner has not shown that his request for an order compelling adjudication of his adjustment application by March 6, 2017, would not adversely affect the public interest. The government has a strong interest in thoroughly reviewing applications for immigration benefits in order to ensure that applicants are eligible under federal law. Plaintiff has not shown that his claimed harm – which the court finds to be generally speculative – is greater than the harm that would result were the court to compel USCIS to immediately adjudicate his adjustment application.

## CONCLUSION

In accordance with the foregoing, the court DENIES the motion for a TRO and preliminary injunction.

The date for the hearing on petitioner's motion, previously set for March 1, 2017, is VACATED. A case management conference will be scheduled by separate order.

**IT IS SO ORDERED.**

Dated: February 27, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge

9