1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MOJTABA TAIEBAT,

            Petitioner,

      v.

LORI SCIALABBA, et al.,

            Respondents.

Case No.  17-cv-0805-PJH

**ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**

Petitioner Mojtaba Taiebat filed this action on February 17, 2017, as a petition for writ of mandamus, asserting causes of action under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(a).  Also on February 17, 2017, he filed a motion for a temporary restraining order ("TRO") and a preliminary injunction, seeking an order compelling the United States Citizenship and Immigration Services ("USCIS") to adjudicate his pending I-485 petition for adjustment of status by March 6, 2017.

The case was reassigned to the undersigned on February 21, 2017.  On February 22, 2017, the court issued an order directing respondents to file a response to petitioner's motion by Friday, February 24, 2017.  On Monday, February 27, 2017, the court issued an order denying the motion.  On Tuesday, February 28, 2017, petitioner filed a motion for leave to file a motion for reconsideration of the February 27, 2017, order.  Having read petitioner's papers and carefully considered his arguments and the relevant legal authority, the court hereby DENIES the motion.

Under the Civil Local Rules of this court, a party seeking reconsideration of an interlocutory order must first request leave to file a motion for reconsideration.  Civ. L.R. 7-9(a).  In seeking leave to file a motion for reconsideration, "[t]he moving party must

1    specifically show reasonable diligence in bringing the motion," and must also show either

2            (1)  That at the time of the motion for leave, a material
3            difference in fact or law exists from that which was presented
             to the Court before entry of the interlocutory order for which
4            reconsideration is sought. The party also must show that in
             the exercise of reasonable diligence the party applying for
5            reconsideration did not know such fact or law at the time of
             the interlocutory order; or

6            (2)  The emergence of new material facts or a change of law
             occurring after the time of such order; or
7

8            (3)  A manifest failure by the Court to consider material facts
             or dispositive legal arguments which were presented to the
             Court before such interlocutory order.
9

10   Civ. L.R. 7-9(a), (b).  In addition, the party seeking leave to file a motion for

11   reconsideration may not repeat any argument previously made in connection with the

12   motion that resulted in the interlocutory order for which reconsideration is being sought.

13   Civ. L.R. 7-9(c).

14          Here, petitioner does not claim either that a material difference in fact or law exists

15   from that which was presented to the court with the prior motion, or that new material

16   facts have emerged or that the law has changed since the issuance of the order.  Rather,

17   he seeks leave to file a motion for reconsideration based solely on Rule 7-9(b)(3) – the

18   "manifest failure by the Court to consider material facts or dispositive legal arguments

19   which were presented to the Court before such interlocutory order."

20          Nevertheless, petitioner does not argue that the court failed to consider material

21   facts or dispositive legal arguments that he previously presented with his motion for

22   TRO/preliminary injunction.  Instead, he contends that he should be permitted to file a

23   motion for reconsideration because the court did not have the benefit of the reply brief

24   that he would have filed.[1]  This is not a basis for reconsideration.  Thus, because

25   petitioner does not seek reconsideration based on Rule 7-9(b)(1), (2), or (3), he has not

26   established grounds for reconsideration, and the motion for leave to file a motion for

27   _____
[1]   Petitioner also (in a footnote) "moves" the court, pursuant to Federal Rule of Civil
28   Procedure 65(a)(2) to "consolidate the hearing" on his motion for a TRO and preliminary
     injunction with a "trial on the merits" of the petition for writ of mandamus.

United States District Court
Northern District of California

1    reconsideration is DENIED.

2    Nevertheless, given the alleged urgency, and in order to ensure that no questions

3    remain regarding the propriety of the court's denial of the TRO/preliminary injunction

4    motion, the court will also address the arguments petitioner makes in his motion for

5    reconsideration.  Petitioner asserts that he would have argued in a reply brief that the

6    court has the authority to issue an order on the merits of the case in response to the TRO

7    motion, that case law "affirms" that the delay in adjudicating petitioner's adjustment

8    application is unreasonable "under the circumstances," and that he is thus likely to prevail

9    on his claims.  He also contends that contrary to the arguments made by respondents, he

10   has established irreparable harm.

11   Petitioner's argument that the court has the authority to issue an order on the

12   merits of the case in response to a motion for a TRO and preliminary injunction, appears

13   to be a response to respondents' assertion that petitioner is improperly seeking – in the

14   guise of a motion for TRO/preliminary injunction – a permanent injunction that would

15   provide the ultimate relief he seeks in the present suit.  Petitioner concedes that courts

16   generally disfavor giving a final judgment on the merits at the preliminary injunction stage,

17   but asserts that the court is not forbidden from granting the requested relief, and that the

18   considerations that would normally counsel against such adjudication are not present in

19   this case.

20   Petitioner argues that unlike in Arce v. Douglas 793 F.3d 968, 976 (9th Cir. 2015),

21   one of the cases cited by respondents, the action in this case is "simple" and "raises

22   purely legal (as opposed to any significant disputed factual) issues" – namely, "the

23   appropriateness of the delayed adjudication" of petitioner's application for adjustment of

24   status.  Petitioner claims that there is only one issue in this case, and that respondents

25   were provided with notice of that issue and an opportunity to respond.  According to

26   petitioner, "nothing prevents [respondents] from fully presenting the legal arguments" and

27   the claim will be "fully ventilated at the early stage of [the] litigation," and thus, in

28   petitioner's view, the court may grant the TRO and preliminary injunction.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    In his second main argument, petitioner argues that "the facts and law clearly

2    favor" granting the motion for TRO/preliminary injunction, as well as the petition for

3    mandamus, because in petitioner's view, respondents' delay in adjudicating the

4    adjustment application is "clearly unreasonable."  Here, he takes issue with the cases

5    cited by the court in the February 27, 2017, order, with regard to what amount of time is

6    "unreasonable."  He claims that for cases that are delayed by background checks (as

7    opposed to "complicated legal and factual issues"), courts within the Northern District

8    have articulated as a "standard" that a delay of two years is "presumptively

9    unreasonable" as a matter of law, and have in fact granted mandamus writs in cases

10   involving less time than that.

11   Petitioner cites Wang v. Gonzalez, 2007 WL 4463009 (N.D. Cal. Dec. 17, 2007),

12   and Dong v. Chertoff, 513 F.Supp 2d 1158, 1169 (N.D. Cal. 2007).  In Wang, a U.S.

13   Citizen and her non-Citizen spouse filed suit under the APA and the Mandamus Act,

14   seeking an order compelling the government to adjudicate the non-Citizen spouse's

15   I-485 petition for adjustment of status.  The application had been pending for four years.

16   The parties agreed to resolve the matter by cross-motions for summary judgment, and

17   the court granted the plaintiffs' motion for summary judgment.

18   In considering whether the delay was unreasonable, the Wang court considered

19   the factors set forth in Telecommc'ns. Research & Action v. FCC, 750 F.2d 70, 89 (D.C.

20   Cir. 1984) ("TRAC" factors), which the Ninth Circuit also uses to evaluate whether agency

21   delay is unreasonable under 5 U.S.C. § 706(a).  The Wang court also cited then-recent

22   cases finding that a delay of two years was presumptively unreasonable as a matter of

23   law.  See Wang, 2007 WL 4463009 at *3.

24   The cases cited by the Wang court included Chao v. Gonzalez, 2007 WL 3022548

25   at *5-6 (N.D. Cal. Oct. 15, 2007) (holding, on summary judgment, that the TRAC factors

26   on balance did not lead to clear resolution, and that delay of more than three years was

27   unreasonable); Dong v. Chertoff, 513 F.Supp. 2d 1158, 1169-70 (N.D. Cal. 2007)

28   (holding on summary judgment that because there was no evidence that government had

4

1   conducted any review of application as required by applicable regulations, the delay of

2   one year was presumptively unreasonable); Gelfer v. Chertoff, 2007 WL 902382 at *2

3   (N.D. Cal. Mar. 22, 2007) (holding re motion to dismiss for lack of subject matter

4   jurisdiction, that court lacked jurisdiction to compel government to approve adjustment

5   application, but did have jurisdiction to compel government to adjudicate the application,

6   and also holding that delay of more than two years was unreasonable as a matter of law,

7   but not ruling on merits of claim); Clayton v. Chertoff, 2007 WL 2904049 at *6 (N.D. Cal.

8   Oct.1, 2007) (on summary judgment, recognizing that courts within this district have

9   adopted two years as an unreasonable amount of time to complete an FBI background

10  check as part of an application for adjustment of status – but noting that in the case

11  before it, the application had been pending for only one year, and the court was unaware

12  of any decision holding that a delay of one year was unreasonable as a matter of law).

13         By contrast, petitioner asserts, the cases cited by the court in the February 27,

14  2017, order involved complex factual scenarios or issues of legal eligibility.  For example,

15  in Dosouqi v. Heinauer, 2013 WL 664150 at *2 (N.D. Cal. Feb. 22, 2013), the adjustment

16  application was filed by an individual who had been granted political asylum, but who had

17  had previous involvement with a Tier III terrorist organization, and his application was

18  held up because of the possibility of a discretionary exemption.  In Islam v. Heinauer,

19  2011 WL 2066661 at *7 (N.D. Cal. May 25, 2011), the government argued and attested

20  that the terrorism exemption process is a "complex and time consuming process" and

21  specifically distinguished cases involving only "incomplete" background checks such as

22  Wang (above).  In Khan v. Scharfen, 2009 WL 941574 at *9 (N.D. Cal. Apr. 6, 2009), the

23  government argued that the determination whether to grant an exemption is a

24  complicated process, involving inter-agency consultation.

25         Petitioner argues that because he has filed an "employment-based" application for

26  adjustment of status – not an adjustment of status application for an asylee requesting an

27  exemption, which would require "legally technical and fact intensive" inquiries – the

28  considerations raised in Dosouqi, Islam, and Khan are thus not at issue here.

1     Petitioner asserts further that there are "new legal developments" that he "would

2     have raised" in a reply to respondents' opposition, but which the court did not have an

3     opportunity to consider (because no provision was made for the filing of a reply brief).  He

4     appears to be claiming that these "new developments" show that he will be "prejudiced

5     and harmed" by the delay in adjudicating his adjustment application, and that the

6     threatened harm is not speculative.

7     First, petitioner again raises the issue of Executive Order 13769, pursuant to which

8     the government sought to at least temporarily exclude citizens of seven Muslim-majority

9     countries from entering the United States.  Petitioner concedes (as he did in his motion

10    for TRO/preliminary injunction) that Executive Order 13769 has been stayed by the Ninth

11    Circuit.  However, he notes that on February 27, 2017, the Ninth Circuit lifted the stay on

12    en banc briefing, and that the government has indicated its intent to issue a new

13    Executive Order, while at the same time challenging the ruling on Executive Order 13769.

14    "Consequently," petitioner asserts, his harm is "not speculative, but likely to happen."

15    Second, in response to respondents' prior argument that any actual harm is

16    attributable to his own actions, petitioner asserts that his harm results from actions that

17    are completely out of his control, including "a change in law by the Iranian government,

18    combined with [respondents'] failure to adjudicate his application within a reasonable time

19    prior to a change in Iranian law that will cause him to lose his ability to travel and exit

20    Iran."  He contends that the issue is not whether he completed his Iranian military service,

21    but rather whether, under Iranian law, he would be free to exit Iran if he were to travel

22    there to visit his family. "Consequently," he adds," the harm is not attributable to his own

23    actions, but rather the change in Iranian law after March 20, 2017."

24    Third, petitioner asserts that respondents would not be prejudiced by an order

25    compelling adjudication of his "employment based application for adjustment of status."

26    Here, he makes several arguments.  He concedes that the government has a strong

27    interest in reviewing immigration applications to ensure that such petitioners are eligible,

28    but argues that the government is "not without a remedy" if derogatory information

United States District Court
Northern District of California

6

1    (concerning petitioner) comes to light.  He contends that USCIS can "take appropriate

2    action," such as "rescission of residency" or can commence removal proceedings against

3    petitioner.

4         Petitioner argues further that because "the only known reason for delay" in the

5    adjudication of his adjustment application is the required background checks,

6    respondents will not be prejudiced by an order compelling adjudication of the application.

7    He claims that USCIS' own policy states that it can approve adjustment of status

8    applications when background checks are pending.  He cites a USCIS "Interoffice

9    Memorandum" dated February 4, 2008, stating that "[w]here the application [including

10   I-485 Applications] is otherwise approvable and the FBI name check request has been

11   pending for more than 180 days, the adjudicator shall approve the I-485 . . . and proceed

12   with card issuance."  He claims that the 2008 memo "appears to still be in effect," as

13   USCIS currently states on its website, that "[applications to adjust status also continue to

14   be adjudicated, according to existing policies and procedures, for applicants who are

15   nationals of countries designated in the Jan. 27, 2017 [Executive Order]."

16        Petitioner also notes that respondents recently approved his request for an

17   extension of his H-1B employment visa, until September 25, 2019, which he believes

18   "included some form of a background check."  He argues that if respondents "had any

19   concerns with his application," they could have interviewed him.  However, he asserts,

20   they have not done so in 20 months.

21        Accordingly, petitioner asserts, because respondents are authorized under agency

22   policy to grant applications for adjustment of status prior to completion of background

23   checks, because they have recently approved an immigration benefit (extension of

24   petitioner's H-1B employment visa), because they are not without a remedy in the event

25   that some negative information comes to light, they would not be prejudiced by an order

26   granting the motion for TRO/preliminary injunction.

27        What petitioner argues in his motion for reconsideration is essentially that he is

28   likely to prevail on the question whether the delay in adjudicating the adjustment

7

1   application (from May 26, 2015, to the present) is unreasonable, and that he has shown

2   that he will be irreparably harmed if he does not obtain the relief he seeks.

3          Petitioner is correct that the cases the government cited in its opposition – and

4   which the court cited in the order for the proposition that delays of up to four years have

5   been held to be not unreasonable – involved applications for adjustment of status

6   submitted by individuals who had actual or suspected prior involvement with terrorist

7   organizations.  However, as noted above, Dosouqi, Islam, and Khan were all decided on

8   summary judgment.  In Dosouqi, the court found that under the facts of the case, a delay

9   of up to four years was not unreasonable.  In Islam, the court found a delay of up to three

10  years was not unreasonable, and cited other cases holding that a six-year delay was

11  unreasonable.  In Khan, the court found that a one-year delay was not unreasonable.

12         Petitioner is also correct that there are a number of cases in this district holding

13  that a two-year delay in adjudicating an adjustment application is presumptively

14  unreasonable under certain circumstances.  However, just as with the above cases,

15  Wang, and the cases cited in Wang (Chao, Dong, and Clayton) were decided on

16  summary judgment.  Gelfer (also cited in Wang), while not decided on summary

17  judgment, did not include a ruling on the merits, just a finding that two years is

18  presumptively unreasonable.

19         What constitutes unreasonable delay in the context of immigration applications

20  depends in large part on the facts of the particular case.  Beyene v. Napolitano, 2012 WL

21  2911838 at *5 (N.D. Cal. July 12, 2013) (citing Gelfer, 2007 WL 902302 at *2).  Here,

22  petitioner has not established that the facts of his case more closely resemble the facts in

23  the Wang category of cases than in the Dosouqi category.

24         As an initial matter, petitioner's argument (in his motion for TRO/preliminary

25  injunction) regarding likelihood of success was extremely sketchy.  Petitioner simply

26  asserted – in seven lines of text – that because more than 620 days had elapsed since

27  he submitted his adjustment application, he was "likely to succeed in showing

28  [respondents] failed to adjudicate his application within a reasonable time frame."  See

United States District Court
Northern District of California

1  Motion (Doc. 3-1) at 10.  He cited no legal authority whatsoever in support of this

2  argument in his memorandum of points and authorities.  He did cite some authority in his

3  petition, though not the cases he has cited in the present motion.

4      In addition, however, petitioner conceded in his petition and in his motion for

5  TRO/preliminary injunction that during the course of his attempt to pursue his application

6  for adjustment of status, a staffer from Rep. Anna Eshoo's office was told by USCIS in

7  April 2016 that it "requires extensive background checks for every application or petition it

8  adjudicates[;]" that "[b]ackground checks involve more than just the initial submission of

9  and response related to biographical information and fingerprints[;]" that USCIS "is aware

10  of your inquiry, and is monitoring progress related to it," but that "unresolved issues in

11  your constituent's case require thorough review before a decision can be rendered."  See

12  Nightingale Declaration in support of Petition for Writ of Mandamus ("Nightingale Decl.")

13  ¶ 11 & Exh. E.  Again, in December 2016, petitioner was advised by Rep. Speier's office

14  that USCIS had advised that the petition was being reviewed by the Background Check

15  Unit, but that it was impossible to say how long the review would take.  Nightingale Decl.,

16  ¶ 17 & Exh. J.

17      It is true that courts have concluded that the government has a nondiscretionary

18  duty to act on an I-485 application, and to do so within a reasonable time.  See, e.g.,

19  Dong, 513 F.Supp. 2d at 1169-70; Singh v. Still, 470 F.Supp. 2d 1064, 1067 (N.D. Cal.

20  2007).  However, in this case, the court does not have sufficient information to determine

21  – at this stage of the litigation – whether the delay is unreasonable.  In determining

22  whether there has been unreasonable delay in processing an application for adjustment

23  of immigration status, courts typically look "to the source of the delay – e.g., the

24  complexity of the investigation as well as the extent to which the defendant participated in

25  delaying the proceeding."  Singh, 470 F.Supp. 2d at 1068.  Where the delay is due to an

26  uncompleted FBI background check, courts have found that under normal circumstances,

27  a delay of two years is unreasonable as a matter of law.

28      In this case, it appears that USCIS may be treating petitioner's application as one

United States District Court
Northern District of California

United States District Court
Northern District of California

1   requiring more than the usual routine background check, which would position this case

2   closer to the Dosouqi category of cases than to the Wang category.  However, the matter

3   is not entirely clear, as the court has not been provided with any information regarding

4   the relations between the United States and Iran – including what information might be

5   available to the United States regarding Iranian citizens who are seeking permanent

6   residency in this country – and also has no way of determining the status of petitioner's

7   application or what factors may be involved in USCIS' processing of that application.

8        This leads to the key characteristic that distinguishes the present case from the

9   cases cited by petitioner, and, for that matter, from the cases cited by the court in the

10   February 27, 2017, order.  That is, where courts have weighed in on the reasonableness

11   of a delay in adjudication of an adjustment application, the matter has generally been

12   before the court on a motion for summary judgment (or on cross-motions).  Here, by

13   contrast, petitioner wants the court to merge procedures for issuing a TRO, a preliminary

14   injunction, ruling on summary judgment, and a trial, all within an extremely brief period of

15   time.  Petitioner has not cited, and the court was unable to locate, any case where an

16   applicant for adjustment of status obtained a ruling on reasonableness as part of a

17   motion for a TRO or preliminary injunction filed at the commencement of the action.  This

18   underlines the difficulty created by petitioner's attempt to obtain – via a TRO – the

19   ultimate relief he is seeking in his petition.

20        Finally, petitioner's argument regarding irreparable harm is not substantially

21   different from the argument he made in his original motion, and the court remains of the

22   view that the purported injury is entirely speculative.  That is, petitioner speculates that

23   the Ninth Circuit may grant en banc review of the decision to stay enforcement of

24   Executive Order 13769, and also speculates that the government may issue a new and

25   revised Executive Order which would be enforceable.  The mere "possibility" of

26   irreparable injury is not sufficient, even if a plaintiff demonstrates a strong likelihood of

27   prevailing on the merits.  See Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 22

28   (2008); Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

United States District Court
Northern District of California

1    Petitioner's assertion that he himself did not contribute to the alleged harm – and

2 that (as the court reads it) that the harm was instead caused by the Iranian government –

3 does not help his case.  He is required to show not only that the harm is imminent and

4 irreparable, but also that the harm will be caused or is being caused by some action or

5 inaction of the respondents, and that it can be remedied by the proposed injunction.  See

6 Perfect 10, Inc. v. Google Inc., 653 F.3d 976, 982 (9th Cir. 2011) (plaintiff must show

7 sufficient "causal connection" between the alleged injury and the conduct sought to be

8 enjoined such that the injunction would effectively minimize the risk of injury).

9    Petitioner's argument regarding the balance of harms (which may represent an

10 effort to address additional TRAC factors) is misplaced, given that he did not address any

11 of the TRAC factors in his original motion, although respondents argued (and the court

12 agreed) that petitioner's argument could be viewed as implicating the first TRAC factor

13 (time to make decision must be governed by rule of reason).

14    In sum, petitioner has not established either a likelihood of success or irreparable

15 harm.  The vast majority of cases involving a determination of the "reasonableness" of

16 time for processing adjustment applications are decided on summary judgment, with a

17 fully developed record and adequate time for the parties to prepare and file their papers,

18 and for the court to consider all the evidence and legal arguments.  Respondents are

19 correct that petitioner is attempting to obtain permanent mandatory injunctive relief via a

20 motion that cannot be decided on such short notice and without an adequate record.

21 Moreover, as explained above, petitioner has not shown that he is likely to be irreparably

22 harmed.

23

24 **IT IS SO ORDERED.**

25 Dated:  March 2, 2017

26                                                                    _____

27                                                                    PHYLLIS J. HAMILTON
                                                                       United States District Judge

28

11